consideration, if it was intended it should be read by them. The courts, before they were disabled by act of congress, treated all articles, calculated to influence the result of a pending case, as contempts of their authority, and punished the writers of such articles accordingly. Now, that article can not be read without showing that there was a bias, at all events, against the defendant. That is undeniable, and if there is good reason to believe that that article had been read by the jury, and had influenced their verdict, if it was shown here conclusively that it had been read by them, we might be obliged, though we would be otherwise satisfied with the verdict, on legal principles, and following established precedents in this regard, to give the defendant a new trial. I make these remarks, because it ought to be understood that all attempts to influence the public mind, and particularly to influence jurors when they have a case, civil or criminal, before them, are improper; and, I think, when journalists, respectable journalists, understand this, they will act accordingly. But it is to be remembered in this case that we said to the jury, after having first prohibited the reading of papers: "You may read papers containing a report of this trial, but you must not read any editorial comments or articles criticising the trial one way or the other." It is in evidence that this article was published, but there is the affidavit of no juror or other person that it was ever read. Mr. Stevens, the bailiff, testifies that two copies of the paper were bought by the jury, but no witness stated that this article was ever read by a juror. Now, in view of the fact that we had cautioned the jury against reading such articles, and this article disclosed that it was an improper one by the very heading of it, shall we suppose that the jury disregarded their duty without any showing, or must we suppose that they did not? That is a matter that, if it were true, could have been shown by the affidavit of jurors, but there is no such affidavit; and on that ground we think that the motion for a new trial must fail, the same as the others.

[NOTE. The defendant then moved in arrest of judgment and to dismiss, on these grounds: (1) That there was no indictment against the defendant pending in the circuit court. (2) That the circuit court has no jurisdiction of the case. (3) That the defendant was not tried on the original indictment, but on an alleged copy thereof. The court overruled both of these motions. Susequently the president granted the defendant an unconditional pardon, which he exhibited with his plea. See Case No. 15,687. To this plea the plaintiff demurred, which demurrer was overruled. Id. 15,688.]

## Case No. 15,684.

UNITED STATES v. McKEE.

[See Case No. 15.683.]

## Case No. 15,685.

UNITED STATES v. McKEE.

[3 Dill. 546; [1] 3 Cent. Law J. 100; 23 Pittsb. Leg. J. 107.]

Circuit Court, E. D. Missouri. Jan. 25, 1876.

CRIMINAL EVIDENCE — DECLARATIONS OF CO-CONSPIRATORS—UNCORROBORATED TESTIMONY OF ACCOMPLICES.

1. On the trial of an indictment for a conspiracy to defraud the government out of internal revenue taxes, where a conspiracy has been proven, and there is evidence connecting the defendant therewith, and one of the conspirators has testified to the fact that, at the end of every week, he gave to a co-conspirator certain moneys, the gains of the conspiracy, it is competent to show by the witness what directions he gave to such co-conspirator as to paying or delivering the money to the defendant.

2. In such case, the subsequent declarations of such co-conspirator, as to what he did with the moneys so paid to him, are admissible as a part of the res gestæ, but not for the purpose of connecting the defendant with the conspiracy, and the jury should disregard it, unless they should be of opinion that the defendant has been connected with the conspiracy by evidence aliunde.

3. In determining whether there has been sufficient evidence of a conspiracy to warrant, as against the defendant, the admission of evidence of the acts and declarations of the alleged conspirators, the court is not at liberty to reject the uncorroborated testimony of self-confessed accomplices and members of the conspiracy. Nor can the court declare, as matter of law, that such testimony is unworthy of belief, unless corroborated. The credibility of such testimony is a question for the jury, under the advice and direction of the court, and is not a question of law for the court.

Indictment [against William M'Kee] for conspiring to defraud the government out of taxes on distilled spirits. Megrue, a conspirator, who had previously pleaded guilty, being on the witness stand, and having testified that, at the end of each week, he turned over a portion of the gains of the conspiracy to Leavenworth, a co-conspirator, since deceased, was asked by the attorney for the government whether he paid the money to Leavenworth, with directions to pay it to the defendant. The question was objected to, and the objection was argued at great length by

Chester H. Krum and Henry A. Clover, in support of the objection.

James O. Broadhead, Lucien Eaton, and D. P. Dyer, contra.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. Evidence by several witnesses has been given, tending to show a conspiracy between certain distillers in the city of St. Louis and the revenue officials, to defraud the government, from week to week, of the tax on distilled spirits produced at their distilleries.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]